First case this afternoon is case number 4140192, City of Bloomington v. Policemen's Benevolent and Protective Association, for the appellate. We have Shane Boyles for the appellate. We have James Powers. Mr. Boyles, you may proceed. May it please the court. This is a public policy exception case. This is also an employee discipline case. Like criminal trials, there are two issues in employee discipline cases. First of all, is the employee guilty as charged? Secondly, if the employee is guilty, what shall the punishment be? The public policy exception cases generally involve employee discipline situations. And of the public policy cases where an arbitrator's award has been overturned, there are generally two varieties. The first variety exists where the employee was found guilty of misconduct by the arbitrator, but was reinstated irrespective of being found guilty. And the second type involves some sort of peculiarity, some sort of special provision in the contract, which prevents the arbitrator or which the arbitrator refers to, rather than reaching the merits of the case. And neither situation exists here. The employee was found not guilty in this case. In this case, the trial court below, under the guise of the public policy exception, changed the finding of guilt, essentially, and found the employee, not the award, but found that the employee was guilty of violating public policy. And by doing so, the trial court did not apply the public policy exception described in numerous decisions. The general rule is that the award should be deferred to, and generally that means the face of the award is unassailable. The question under the public policy exception is whether the award, as written, violates public policy. In other words, is enforcement of the contract as interpreted by the arbitrator against public policy? And in the trial court below, the terms of the contract were never discussed in the court's order. Likewise, in the defendant's brief on appeal, the argument section nowhere mentions the terms of the contract. That means, at a minimum, this isn't the second sort of public policy case where some sort of irregularity, peculiarity, technicality of the contract was relied upon by the arbitrator to never reach the merits of the case. Again, it's also not a case where the arbitrator said, yes, the employee is guilty of misconduct, but I'm going to reinstate them anyway. The trial court massaged, for lack of a better term, minor details of the award to reach a different overall conclusion from what the arbitrator reached. For example, time and again, the arbitrator… Well, are we reviewing the trial court's findings? No, Your Honor. It's supposed to be a deference to the arbitrator's award. Okay. I guess what I'm trying to say then, so what really difference does it make about what the trial court did or did not do? Well, that's why we're here, for one thing. The trial court decided that the award effectively condoned the, I guess, mistreatment of children by officers in the future. I can move on from this section. I don't need to describe… Well, no, I want you to make the argument you want, but it seems like you're suggesting that what the trial court actually did isn't what this court is reviewing anyway. We're reviewing what the arbitrator found, and so if it doesn't really matter, I don't know that we need to hear that argument. But I certainly want you to proceed however you feel is appropriate on behalf of your client. Understood. Understood, Your Honor. Thank you. Let me ask you about the ex parte communication matter. You're arguing that Judge Foley had to recuse herself following her receipt of the ex parte communications. Am I correct? Yes. What should she have done in your judgment upon having email ex parte communications transmitted to her? My recollection of Supreme Court Rule 63 is that the trial judge, I think, had a couple different options, either recusal or immediately notify the parties and give them an opportunity to respond. That's what I recall from Supreme Court Rule 63. So had she immediately notified the parties, what would you have said? Well, it would have needed more information about the extent of the ex parte. Do we know what the email said? We do. What did they say? I don't recall. I recall there was a lengthy one from the child's mother. I didn't spend a lot of time focusing on the emails. So essentially critical of your client. I think that's correct. Saying, Judge, you should get rid of him. He's a bad cop or whatever. Correct. Well, the reason I ask this is because downstate, which is everywhere but Cook County, judges are often better known in the community than they are in Chicago. And we go about our daily lives shopping and doing other stuff that other people do. And let's assume I've got a – I was the trial judge in this case and I'm at an Illinois sporting event in Champaign-Urbana. Some guy sees me and knows who I am and says, you know, that cop's a bad cop. You should get rid of – I know he's got some case in your courtroom, but you should get rid of him, Judge. Throw him out. Right. Do I have to recuse myself? Whether you have to recuse yourself, that's – I suppose that's up to interpretation. I think the better course of action would be to go ahead and recuse. Explain that you don't believe you have a conflict, but now that your appearance exists. So it's a criminal case. And let's assume that I have a reputation as being a hard guy in criminal cases. And some friend of the defendant's comes up to me to get rid of me on the case and says, that guy's a bad guy. He's done a lot of these crimes. You should really throw the book at him, Judge. Put him away forever. Do I have to recuse myself? Again, I don't know that you have to recuse yourself. The better course of action would be to explain what happened. Well, we're talking about unsolicited communications addressed to a judge in a small county. I use the example of one where I'm just out and about. But one's email address is fairly easy to get. We have state email addresses, and we have no control over what someone sends to us. I'm just concerned that your argument would open the door for the kind of misuse of attacking a given judge, causing that judge to, out of caution's sake, as you just said, you better get off this case, Judge, because otherwise there's going to be an issue raised about your fitness, your impartiality, your fairness. When, in fact, using the examples I gave, I wouldn't give a damn that some guy at a sporting event contacted me and said this. I'm sure I can think he's a jerk. But you're suggesting I'd have to do that anyway, recuse myself? I'm suggesting that everybody in this room, the attorneys and the judges, have to follow Supreme Court Rule 63. And, counsel, in that regard, does the rule require that the judge recuse him or herself, or does the rule require that you disclose and give an opportunity to respond? I think it gives options. One of the options is disclose the communication to the attorneys and give them an opportunity to respond. Another option is recusal. I think, if I recall correctly, it lists two or three or maybe even four different options that a trial judge would have in that situation. But there's no requirement that you recuse? There's no requirement, from my recollection, there's no requirement in Supreme Court Rule 63. I think some of the cases say that the better course of action is to go ahead and recuse. So does the fact in this case that the judge had the communications, did not disclose them, put together the order in the case, and then basically, after ruling, disclosed with no opportunity for the parties to respond, does that impact your analysis of the issue? That's what I said violated Supreme Court Rule 63. Yes. So the judge should have simply, before ruling, said, by the way, counsel, and to both counsel, I received these e-mails, I'm telling you about it because Supreme Court Rule says so, they're not going to affect my ruling, and it's just some person who doesn't understand that I'm going to be basing my decision on what I hear in the courtroom. I'm telling you about it, and if you have anything further, I don't intend to recuse myself, and if you have anything further you don't want to say, I'll give you a chance to do so. Why would you have said that? Probably, that happens quite often. It happens in arbitration. I think the judge would extend the courtesy to both parties. The parties may have gotten together and said, no, Judge, it's fine. We're comfortable with what happened. Well, what if he did it? What if he said, my client doesn't want to be in this case anymore, Judge, in view of the e-mail? Well, he'd probably have to file a motion, and we'd have a hearing on it. Would the judge commit error if she denied the request for recusal? Under the circumstances you just described? I don't believe so, no, as long as the judge followed Supreme Court Rule 63. I don't believe that would be reversible error. I would also say that I don't think McLean County qualifies as a smaller community. I think there are plenty of other judges available. Oh, I don't think that's the standard. I should be more clear in my concern. It's a small enough community so that judges out and about town are likely to be recognized and identified or even spoken to improperly, much more so than Chicago, where they're essentially anonymous. And it's the problem of someone, if you're a judge, you can receive all kinds of unwanted and unsolicited commentary, and I think there's a real problem if you're suggesting the standard has to be, someone talked to you, Judge, now you have to get off the case. Right. The standard is what the Supreme Court said it is. Perfect. Counsel, I'd like to ask you about the public policy exception. Sure. You're taking the position that there is no public policy regarding the protection of children? No. What is your position? Obviously, there is a generalized public interest protecting children. I mean, it's in everybody's interest to protect children. I think at a minimum, under the public policy exception, we should be operating from the same sheet of music, that we should be identifying where the source of public policy is in a particular case so that we all know what statute, what rule, what court decision, what, you know, basically operating from the same sheet of music. And I think the cases instruct that it's improper to rely on generalized supposed public interest. I think our criticism of the defendant's argument is that it's too broad. And so how specific does it have to be? Are you suggesting that we have to have a law that specifically regulates interaction between police officers and children in order for there to be a public policy exception? No, Your Honor. Okay. So tell me, what do we need? Well, I think, I know that we need a law. The arbitrator suggested that the school and the police department reevaluate their policies, which they can do, which probably they should have done. And it's state law that under the Illinois Public Labor Relations Act, Section 14i, that an arbitrator cannot tell a city what their use of force policy will be. So it makes abundant sense for the department to maybe address this policy issue. Maybe there's a gap in their policy, maybe there's a gap in their training, and also the school district. But the union's not advocating for a new law. And the law's pretty clear that the arbitrator can't make that decision. But my question is, what needs to be in place for the public policy exception to apply for finding that there is a public policy in favor of the protection of children? You're saying it doesn't have to go as far as being a law that specifically regulates conduct between police officers and children. But on the other hand, you're saying what's been advocated here by opposing counsel is too general. So what do we need? Well, I think there's some reference to the Abused and Neglected Child Reporting Act. And even under the 1996 Aspen case, I think the issue with that employee who was a DCFS employee is whether or not they violated the same laws that they are not sworn but required to enforce, supposed to enforce. And that was also the issue that was in play with the Decatur police benevolent case. So the Abused and Neglected Child Reporting Act could be one place to look. The defendant in the trial court below referenced the school code.  The issue with the school code also allows or recognizes that there are competing policy interests involved. Specifically, the provision about restraint, whether or not something qualifies as restraint. The third place that I think the defendants referenced isn't applicable at all. It's the Juvenile Court Act or the Police Training Act. And that talks about the criminal procedure aspects that police officers must be trained on when handling juveniles. It doesn't mean physically handling juveniles. It means that they arrest somebody who's under the age of 18. Do they have to bring in their parents? Do the parents have to be present when they're readmitted into that system? So it's not so much that there aren't public policies already out there. I think it would be troubling to apply the Abused and Neglected Child Reporting Act to the effects of this case. And I think the school code doesn't present this court with a dominant public policy. And the other public policies relied upon just really aren't applicable at all. But we look to the Constitution, statutes, and case law. And so if we find this public policy regarding the treatment of children and the protection of children running through all of those things, doesn't that equal a well-defined and predominant public policy? I think there are cases that say just that, yes. But again, that's the first prong of the public policy exception. The second prong is whether or not the contract as reflected in the award violates public policy. And here we don't have that. Here we have a situation where the defendant is actually arguing that the employee's conduct, rather than the arbitrator's award, is what can violate public policy. And that's contrary to the federal standard, which is identical to the standard in Illinois. And I referenced that in my reply brief. Page 30 of the defendant's brief, they make the statement, it's the employee's conduct that should be looked at, not what the arbitrator's award says. And that's just wrong. The question is whether or not the arbitrator's award now requires some sort of public policy violation. And this award does not do so. In fact, the award suggests that, hey, there is a clash of cultures here. There may be a gap in policy. Maybe you should reevaluate your policies. But it's too far-stretched to say that this award encourages not only similar behavior in the future, but more exaggerated behavior, which is where I think the defendant's argument goes. At bottom, we don't believe that the trial court applied the public policy exception as it should have been applied, and also that at no time, either in the trial court or here today, has the defendant met both prongs of the public policy exception. Thank you. Mr. Powers? Thank you. May it please the Court, my name is Jim Powers, and I represent the appellee, the City of Bloomington, in this matter. This case involves the question of whether a grievance arbitration award and its interpretation of the underlying collective bargaining agreement, specifically the just cause section of the collective bargaining agreement, violates the well-defined dominant public policy that favors the safety of elementary school age children. This question can be subdivided into two questions. The first question, as was just described, is whether or not there actually does exist a well-defined and dominant public policy that favors the safety of elementary school age children. The second question then becomes, assuming that that public policy exists, does the grievance arbitration awarding question, as it interpreted and applied the parties' collective bargaining agreement, does that award violate public policy if it doesn't provide an assurance that the actions in this case, the actions of a police officer who, for all intents and purposes, perceived that he was dealing with a normal seven-year-old child, lifted the child off the ground, pinned the child against the wall for five to eight seconds, admittedly, by his own admission during the hearing, simply to stop the child from screaming and mentioning to the child, shut up, you're giving me a headache. Does that action, or is there a risk of that action repeating itself? That is the key in determining whether or not this... Whose call is that? That is the judiciary's call, Your Honor. Why isn't it the ALJ's call? The arbitrator's call. The case law is clear that the judiciary is the body that has the role for determining whether or not something violates public policy. The arbitrator is a creature of contract, in a sense, if you will, and the arbitrator's role is simply... Well, it's a fact finding, isn't it? Don't we review the arbitrator's fact findings and decide whether those are supported by the evidence? That is one way of challenging a grievance arbitration award. In this case, the focus of the city's appeal, which was accepted by the trial court, was public policy. Yes, there is another avenue of attacking or challenging our grievance arbitration awards. That's challenging the fact finding and whether the award draws its essence from the collective bargaining agreement. Well, let me be more clear. It seems to me that before you can reach a public policy issue, you have to decide whether or not the behavior engaged in was bad, and therefore contrary to a public policy that might be in existence with regard to protection of children. If the prior fact determines, no, it wasn't bad, if so fact, there would be no violation of public policy, would there? I would respectfully disagree with that. I think that analysis would properly come under the second prong of the public policy analysis. The first prong would be, does a public policy exist? You would take the facts as found by the arbitrator, and that's what I think both parties have been doing in this case, is we've taken the facts as they are summarized in that award. You superimpose those facts on the public policy that is identified by the court, and then you can decide whether or not those facts as found by the arbitrator. So you're not disputing the factual findings of the arbitrator? No, I think all through this appellate proceeding we have been, and the trial court proceeding, we've been accepting the face of the arbitration award. Didn't the arbitrator conclude that the officer did essentially nothing wrong? Well, she found, she concluded that there was no violation of the work rules of the City of Bloomington and the just cause standard of the collective bargaining agreement. I believe what the arbitrator, and what we've argued in the brief, is that she figuratively lost sight of the forest through the trees, in that she was so focused on analyzing the continuum of force regulation in the department's work rules, she was so focused on deciding whether or not the officer had choked or didn't choke the employee, that she lost sight of the fact that some of these other actions by the officer were inherently dangerous. To what extent should the recent decision of this court in Oglesby v. DCFS serve to inform the analysis before us? As we argued in our brief, Your Honor, we think that it has no relevance whatsoever. As we explained, there certainly is no race judicata or equitable estoppel effect on the City of Bloomington, because we were not a party, the City was not a party to that proceeding and about the DCFS and Mr. Oglesby. Well, at a minimum, it seems to me that where the officer was put on the watch list by DCFS for his alleged improper behavior, and we said, no, that's wrong, based on the same behavior which is the subject to these proceedings, that's a conclusion by this court which seems to be somewhat inconsistent with the argument you're now making that his behavior was in violation of the public policy of the State. I would respectfully disagree. If you read closely the first Oglesby decision, it was simply analyzing a set of facts that was generated in an administrative proceeding, applying those facts to a statutory standard, and seeing whether or not the DCFS had carried its evidentiary burden of proof. So your argument is that, on the one hand, we can conclude in the earlier case involving the same officer on the same factual content, same issues, that DCFS was mistaken to put him on its watch list, yet that officer's behavior was so egregious as to constitute a violation of public policy of the State concerning the protection of children. Correct. There's no inconsistency in this? There is no inconsistency for two reasons. Number one, you were dealing with a different statutory standard. You were trying to figure out whether the record in that case rose to the level of... The standard now is higher. The public policy is a higher standard than just should someone be on the watch list of DCFS, isn't it? Well, no, because in that case it wasn't on the watch list. You were trying to determine whether or not abuse actually occurred. Here, the standard is actually... Well, because abuse occurred to put him on the watch list. If we concluded no, therefore the watch list designation was inappropriate. The standard that you were applying in the first Oglesby case, whether the facts rose... Facts which were different from the facts in this case. All the facts were not actually introduced in that case as this arbitrator was able to uncover and actually address. So the facts were different and the standard was different as well. Analyzing the two parts of the test, I just wanted to briefly comment on the first part. Some questions were just asked about what it takes to actually identify a well-established and dominant public policy. The city would respectfully submit that the union is erroneously analyzing and too narrowly analyzing what it takes to qualify as a public policy. The decisions hold that you don't need an actual statute to actually address or prohibit the actions that took place in a particular context. Number two, case law has found that you don't even need a statute in the very same context or employee context. A classic example is the city of Chicago firefighters case where the first district appellate court found very clearly that there was a public policy favoring quick and efficient emergency response. It involved the city of Chicago firefighters throwing a party. In that case, the first district, among other things, relied on several statutes that really didn't seem to apply to the city. The Forest Fire Act of Illinois as well as the Fire Protection District Act, which really didn't apply to the city. The point being that the courts and the judiciary are permitted to look beyond simply a statute that discreetly applies to the fact pattern and to the type of employee in question. In this case, the fourth district as well as the Supreme Court have in several cases found that there is a dominant and well-defined public policy favoring the safety of elementary school age children. As for the second prong of the test, just briefly again as I had mentioned, the key is whether or not the remedy or the resulting action of the arbitrator has provided any assurance that the same actions will not repeat again in the future. In this case, the Supreme Court has, I'm sorry, in the AFSCME case, the 1996 AFSCME case, the Supreme Court has explained that if an arbitrator actually as part of the remedy of reinstatement makes certain factual findings indicating that there is no risk of recidivism, if there is no risk of the employee repeating his or her conduct, maybe possibly because of some penalties or some prophylactic measures, the Supreme Court has indicated that those types of findings must be honored and respected by the judiciary. In this case, there were no findings indicating that the dangerous conduct that the grievant had engaged in will possibly or will not repeat itself again. The city would submit that when you read the factual findings that the arbitrator made in her award, there is a real risk that this may happen again, especially when you accept the premise, as the arbitrator did, that the grievant was simply observing and simply reacting to what he believed in his mind was a normal seven-year-old child whom various witnesses described as simply throwing a temper tantrum. Without some sort of prophylactic measure in the award assuring the city of Bloomington and assuring its residents that it would not face another reoccurrence or re-event of this type of an occurrence, that is the key at the second prong of the test as what violates public policy. I would just like to finalize my comments about the Rule 63 and the recusal issue. The city would submit that I think you have a rather easy way of resolving that matter without having to squarely address whether or not the judge actually should or shouldn't have recused herself. Number one, the union did have, as we explained in our brief, at least six to seven days to file some sort of a motion challenging her failure to And number two, as was pointed out, this is a de novo standard of review. You're not necessarily bound by any credibility, determinations, or facts as rendered by the trial court. So even if, assuming arguendo, that there was some harm or some error in the judge not recusing herself, what's the harm if this court is reviewing those legal issues de novo in any event? So there are some easy ways out without having to grapple those thorny issues. In conclusion, I would just request on behalf of the city that the court affirm the trial court's judgment. In doing so, the court should find that a collective bargaining agreement that requires the reinstatement of agreement and endangers what he perceived to be a normal seven-year-old boy throwing a temper tantrum violates well-established Illinois public policy. Thank you. Thank you, Mr. Powers. Mr. Boyles, do you have any rebuttal? I think the first comment that counsel made is that this is just a just cause case. It's not a just cause case. It's similar, but it's not a just cause case. Page of the record, C-115, it's page 9 of the appendix, sets forth the contractual language. If you just look at the cases, the public policy cases, you can assume that there's a just cause provision in the contract. But if you actually read the award, which I'm sure the members of the the award nowhere encourages future similar behavior. It actually encourages the department to change its policies as well as the school district. The second prong, there's just no chance under this particular award that the second prong of the public policy exception was met. This award in no way jeopardizes the future safety of children in Bloomington or anywhere else. Okay. Thanks to both of you. The case is submitted and the court stands in recess.